Phillip Wayne **HARRIS**,
Plaintiff–Appellee,

v.

David **EVANS**, Commissioner, Lanson Newsome, Deputy Commissioner, A.G. Thomas, Warden, Defendants–Appellants.

No. 89–8589.

United States Court of Appeals,
Eleventh Circuit.

May 17, 1994.

---

Terry L. Long, Office of State Atty. Gen., William B. Hill, Daryl A. Robinson, Atlanta, GA, for defendants-appellants.

James G. Middlebrooks, Smith, Helms, Mullis & Moore, Charlotte, NC, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK and CARNES, Circuit Judges, * and CLARK **, Senior Circuit Judge.

BIRCH, Circuit Judge:

In this appeal, we must decide whether an inmate has standing to assert the First Amendment rights of prison guards relative to a prison policy prohibiting its employees from communicating directly with the parole board on behalf of prisoners. Because we find that the prisoner does not have standing, we reverse and remand to the district court for dismissal based on lack of jurisdiction.

## I. BACKGROUND

The appellee, Phillip Wayne Harris, filed this *pro se* action in the United States District Court for the Southern District of Georgia under 42 U.S.C. § 1983.[1] Harris, an inmate incarcerated in the Georgia state penal system, challenged a policy of the Georgia Department of Corrections ("DOC") prohibiting prison employees from making parole recommendations directly to the Georgia State Board of Pardons and Paroles.[2] Harris claims that the policy violates the employees' free speech rights under the First Amendment of the United States Constitution.

In his complaint, Harris alleges that he had asked prison employees to write letters on his behalf, but that the DOC policy prevented them from doing so. *See* R1–2–4. As the appellants point out, Harris made no claim that there were prison employees who, but for the prison policy, would have written letters on his behalf. Harris, however, now argues that this claim is implied.

The case was assigned to a magistrate judge, and the defendants filed a motion to dismiss, asserting that prison employees do not have a First Amendment right to communicate directly with the parole board regarding the parole of particular inmates. The magistrate judge, treating the motion as one for summary judgment, recommended that the motion be denied. The district court adopted the report and recommendation of the magistrate judge and provided a certificate of immediate review. We have jurisdiction under 28 U.S.C. § 1292(b). After the original panel affirmed the decision of the district court,[3] we vacated the decision and granted the appellants' petition for rehearing en banc.

## II. DISCUSSION

### A. The Nature of Standing

■ The Supreme Court's jurisprudence on standing has long been the object of spirited criticism from scholars and judges alike. *See* William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 221 (1988). Critics contend that the caselaw lacks coherence and consistency. *E.g.*, *Flast v. Cohen*, 392 U.S. 83, 129, 88 S.Ct. 1942, 1967, 20 L.Ed.2d

---

* Senior U.S. Circuit Judge Fay, who was a member of the en banc court which heard oral argument in this case, took senior status on 1–19–94 and therefore did not participate in this decision. Judge Rosemary Barkett became a member of the court after October 1, 1993, when this case was argued and taken under submission. She has elected not to participate in this decision.

** Senior U.S. Circuit Judge Clark elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

1. Harris named as defendants the former Commissioner and Deputy Commissioner of the Georgia Department of Corrections, as well as the Warden of the Georgia State Prison at Reidsville, where Harris was incarcerated.

2. The policy is set forth in a DOC memorandum dated September 26, 1988: "Advise all staff members ... that individual employee recommendations to the Parole Board in behalf of inmates must end. It not only violates the principal [sic] of chain of command, but may in fact compromise individual employees.... Strict adherence to this policy is a requirement." *See* R1–7–Ex. 1.

3. *Harris v. Evans*, 920 F.2d 864 (11th Cir.1991), *vacated and reh'g en banc granted*, 999 F.2d 1424 (11th Cir.1993).

947 (1968) (Harlan, J., dissenting) (characterizing standing as a "word game played by secret rules"). In the midst of this confusion, it is imperative that we remain focused on the central purpose of the standing requirement: to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly.

The concept of standing derives from the principle of separation of powers on which our government is founded. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The inquiry is "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). We have held that "[t]he essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions.'" *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir. 1987) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).[4]

The Supreme Court has set forth an analytical framework for resolving standing issues that is comprised of both "constitutional" and "prudential" requirements. *See Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2205; *Saladin,* 812 F.2d at 690. The constitutional requirements derive from Article III's limitation of federal jurisdiction to situations where a justiciable "case or controversy" exists between the litigants. *Warth,* 422 U.S. at 498, 95 S.Ct. at 2205. In order to satisfy this " 'irreducible' constitutional minimum," *Saladin,* 812 F.2d at 690, the plaintiff must show: (1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling. *Id.; see Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2205.

In addition to these constitutional requirements, the court has fashioned three principles of judicial restraint, which have come to be known as "prudential" considerations. These self-imposed constraints are intended to ensure the proper role of the courts in our tripartite system of government by avoiding judicial resolution of abstract questions that would be more appropriately addressed by other governmental institutions. *Warth,* 422 U.S. at 500, 95 S.Ct. at 2205–06. We have summarized the three prudential considerations as follows:

> 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Saladin,* 812 F.2d at 690. This third prudential consideration, the general prohibition against third-party standing, is our primary concern in the instant case.

### B. Third-party Standing

We find that Harris lacks standing in this case under the general principle that a litigant must assert his own legal rights and interests and may not ordinarily rely on the rights and interests of third parties. The prohibition against third-party standing promotes the fundamental purpose of the standing requirement by ensuring that the courts hear only concrete disputes between interested litigants who will frame the issues properly. *See Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 220–21, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706 (1974).

---

**4.** We note at the outset that standing cannot be waived and may be asserted at any stage of litigation. *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,* 777 F.2d 598, 606 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206.

In spite of these important purposes, the Supreme Court has recognized several factors that may justify exceptions to the general rule against third-party standing.[5] One of the Court's most recent pronouncements on the issue, *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), involved the rights of criminal defendants to raise the equal protection rights of jurors who are excluded on the basis of race. There, the Court characterized the third-party standing inquiry as follows:

> We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: the litigant must have suffered an "injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Id.* at 409–12, 111 S.Ct. at 1370–71 (citations omitted).[6] We have examined each of these factors and find that none justifies granting Harris standing to litigate the First Amendment rights of prison employees.

### 1. Injury in Fact

In order to have third-party standing, a party must first show that he has suffered an actual or threatened injury. *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976) (plurality opinion). In other words, the plaintiff must show that he has "a sufficiently concrete interest in the outcome of [the] suit to make it a case or controversy subject to a federal court's Art. III jurisdiction." *Id.* In describing the types of injuries that satisfy the Article III requirement, the Supreme Court has used the terms "distinct and palpable injury," *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206, "particular concrete injury," *United States v. Richardson,* 418 U.S. 166, 177, 94 S.Ct. 2940, 2946, 41 L.Ed.2d 678 (1974), and "specific present objective harm," *Laird v. Tatum,* 408 U.S. 1, 14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972).

We find that Harris has failed to make the requisite showing of a concrete injury in fact. Harris's complaint alleged only that he had *requested* that prison employees write recommendation letters on his behalf to the parole board, but that the DOC policy prevented them from doing so. Harris never made any showing that there were specific prison employees who, but for the prison policy, would have written favorable letters on his behalf. Moreover, Harris cannot show that the inability of prison employees to write letters harmed him in any specific, objective manner.

We are mindful, however, of the less stringent standards to which *pro se* litigants are held. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). Given this liberal interpretation, and because several other factors counsel against the grant of third-party standing, we do not decide the case solely on the basis of Harris's inability to show an injury in fact.

---

5. We note that, despite Harris's contention, the present case is not a First Amendment overbreadth challenge, justifying relaxation of the third-party standing prohibition. The Supreme Court has recognized that, in certain cases, the risk that a third party's free speech may be "chilled" by an overbroad statute or ordinance may warrant the grant of standing to a party whose speech is not protected by the First Amendment. *E.g., City of Houston v. Hill,* 482 U.S. 451, 458–59, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987); *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973); *Coates v. City of Cincinnati,* 402 U.S. 611, 616, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971). In the present case, however, Harris makes no claim that the application of the policy to *him* has chilled the free speech of the prison guards. Because the policy has no application to Harris, overbreadth analysis is inappropriate in this case.

6. Although the *Powers* Court characterized these factors as "criteria" that must be met in order to justify third-party standing, the Court has not always been so clear. In *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality opinion), for example, the plurality described these factors as "factual elements" that may justify an exception to the general rule. *Id.* at 114–17, 96 S.Ct. at 2874–75. The Court has thus been unclear as to how the factors should be applied and whether or not all of the factors must be met in order to justify third-party standing. Nevertheless, the issue is irrelevant in the present case because *none* of the factors justifies a grant of third-party standing.

## 2. Substantial Relation

A second factor recognized by the Supreme Court as a justification for third-party standing is the existence of a substantial relationship between the litigant and the third party. As the Supreme Court recognized in *Singleton*, in certain circumstances "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." 428 U.S. at 115, 96 S.Ct. at 2874. In the past, the Supreme Court has recognized various relationships that may give rise to third-party standing. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 481, 85 S.Ct. 1678, 1679, 14 L.Ed.2d 510 (1965) (doctor-patient); *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 721, 110 S.Ct. 1428, 1432, 108 L.Ed.2d 701 (1990) (attorney-client); *Craig v. Boren*, 429 U.S. 190, 192–93, 97 S.Ct. 451, 454, 50 L.Ed.2d 397 (1976) (vendor-vendee). Where this "congruence of interests" exists, it may be "necessary and appropriate" for the litigant to raise the rights of the third party. *Powers*, 499 U.S. at 414, 111 S.Ct. at 1372.

In the instant case, however, Harris makes no claim that he enjoys a substantial relationship with the third parties whose rights he seeks to assert. The relationship between a prison inmate and the prison employees responsible for enforcing his incarceration is not the type of relationship that typically gives rise to third-party standing. In fact, we believe that the adversarial nature of the relationship actually counsels *against* the grant of third-party standing in this case.

When examining each of these factors, we must keep in mind the fundamental goal of the standing inquiry: ensuring that litigants have a concrete stake in the outcome of the proceedings such that the issues will be framed properly. This goal will be served only when the interests of the litigant and the third party right-holder are properly aligned.[7] In the instant case, we are convinced that this "congruence of interests" does not exist.

One of the primary purposes of the policy that Harris challenges is to protect the prison guards from any threats, coercion, or retaliation that could result if guards were allowed to communicate directly with the parole board with respect to individual prisoners.[8] Thus, one of the primary reasons that the prison guards do not challenge the policy themselves may be, simply, that they like it. In any event, the policy's vastly different effects on the prisoners compared to the prison guards highlights the incongruence of interests.[9] We thus hold that, based on the adversarial nature of the relationship be-

---

7. On several occasions, the Supreme Court has denied standing based on the inconsistent interests between the litigant and the third-party right-holder. *See* Marc Rohr, *Fighting for the Rights of Others: The Troubled Law of Third–Party Standing and Mootness in the Federal Courts*, 35 U. Miami L.Rev. 393, 457 (1981) (citing *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976); *Mercer v. Michigan State Bd. of Educ.*, 419 U.S. 1081, 95 S.Ct. 673, 42 L.Ed.2d 678 (1974), *aff'g* 379 F.Supp. 580 (E.D.Mich.1974); *Jeffrey Mfg. Co. v. Blagg*, 235 U.S. 571, 35 S.Ct. 167, 59 L.Ed. 364 (1915); *Erie R.R. v. Williams*, 233 U.S. 685, 34 S.Ct. 761, 58 L.Ed. 1155 (1914)). In *Singleton*, the Court explained its rationale for denying third-party standing when the third party's interests will not be best served: "[T]he courts should not adjudicate [a third party's] rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not." 428 U.S. at 113–14, 96 S.Ct. at 2874. The Court added that "third parties themselves usually will be the best proponents of their own rights." *Id.* at 114, 96 S.Ct. at 2874.

8. The September 26, 1988, DOC memorandum states that direct employee communication with the parole board on behalf of prisoners "may in fact compromise individual employees." R1–7–Ex. 1. The appellants did not vigorously assert the security interests of the prison employees in the proceedings below because they contended that resolution of this issue was unnecessary. *See* Defendant's Objections to Magistrate's Report and Recommendation at 5–7 (R1–12–5–7). The appellants did, however, directly refute the conclusion that the DOC policy "is not justified by any important security interest." *Id.* at 5.

9. Even scholars who argue for a liberal interpretation of the rule against third-party standing concede that the doctrine should not be relaxed when commonality of interests is lacking. *E.g.*, Rohr, *supra* note 7, at 455. "A court should permit third-party standing ... unless it believes that third parties oppose the result sought by the litigant, or that the litigant may not adequately press for a desirable result for third parties." *Id.*

tween prisoners and prison guards and the differing interests of the two groups, the relationship between litigant and third party in this case does not justify relaxation of the general rule against third-party standing.

### 3. Dilution of Third Party's Ability to Protect Rights

The third criterion cited by the *Powers* Court for relaxation of the general rule against third-party standing is whether the rights of the third party will be diluted or infringed if the litigant is not allowed to assert those rights on behalf of the third party. This factor is the central consideration in the grant of third party standing; most cases where the Supreme Court has allowed third-party standing can be justified on this basis. *See, e.g., Powers,* 499 U.S. at 413–16, 111 S.Ct. at 1372–73 (because jurors face "daunting" barriers to bringing suit for discriminatory exclusion from jury service, criminal defendant has third-party standing to raise equal protection claims on behalf of excluded jurors); *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 392–94, 108 S.Ct. 636, 642–43, 98 L.Ed.2d 782 (1988) (bookstores have third-party standing to assert First Amendment rights of adult book buyers in challenging statute prohibiting display of written or visual material harmful to minors because enforcement of statute against bookstores would limit adults' access to protected materials); *Secretary of State of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 956–57, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984) (" 'Litigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.' " (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973))); *Craig,* 429 U.S. at 195, 97 S.Ct. at 455–56 (beer vendor allowed to raise third-party equal protection rights of 18–21 year-old males because rights of third parties would be " 'diluted or adversely affected' " by enforcement of statute against vendors);

*Singleton,* 428 U.S. at 116–18, 96 S.Ct. at 2875 (physicians have third-party standing to assert rights of low-income women because enforcement of state regulation denying Medicaid payments for non-medically necessary abortions against physicians would infringe rights of low-income women to obtain abortions); *Barrows v. Jackson,* 346 U.S. 249, 257, 73 S.Ct. 1031, 1035, 97 L.Ed. 1586 (1953) (white landowner has standing to assert rights of blacks in challenging racially restrictive covenant because covenant only applied to landowners, so that enforcement of covenant against white landowners would infringe fundamental rights of blacks who wish to purchase land). We believe that Harris has failed to show that the First Amendment rights of prison employees will be diluted or adversely affected if Harris is denied standing to assert those rights.

We can find no impediment to the ability of the prison guards to assert their own First Amendment rights if they wish to do so. As we noted earlier, the only reason we can fathom for the reluctance of prison guards to challenge the policy is that they like it; the policy protects them from threats, coercion, and possible retaliation from disgruntled prisoners.[10] Moreover, the policy in question applies directly to the prison guards and only indirectly affects Harris. Therefore, unlike the cases cited in the preceding paragraph, our denial of third-party standing in this case will have no effect on the ability of the prison guards to assert their own rights if they wish to do so. We thus conclude that the third, and most important, justification for third-party standing, the potential dilution of the third party's rights, is lacking in this case.

### III. CONCLUSION

Based on these considerations, we hold that Harris is not the proper party to raise the First Amendment rights of prison employees. Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned, such that the litigant will adequately and vigorous-

---

**10.** *See supra* note 7 and accompanying text (discussing principle that courts should deny third-party standing when third parties oppose results sought by litigant).

ly assert those interests. The present case presents a compelling example of a case where those interests are not aligned.

In *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), the case cited most persuasively by Harris, the Court granted a professional fund-raising company third-party standing to assert the First Amendment rights of charitable organizations in challenging a statute placing limitations on the percentage of funds that could be paid to such professional fundraisers. *Munson,* however, is distinguishable from the instant case because the professional fundraisers in *Munson* actually faced the threat of prosecution under the challenged statute. *See id.* at 951, 954, 104 S.Ct. at 2844, 2845. Therefore, the professional fundraisers could show a concrete injury resulting from the statute. *See id.* at 973–74, 104 S.Ct. at 2856 (Stevens, J., concurring) (emphasizing the importance of the actual or threatened injury in casting crucial fifth vote).

More importantly, however, the distinguishing factor in *Munson*—and the factor emphasized by both the majority and Justice Stevens—was the congruence of interests between the professional fundraisers and the charitable organizations. As the majority concluded in its standing analysis, "The activity sought to be protected is *at the heart of the ... relationship* between Munson and its clients, and Munson's interests in challenging the statute are *completely consistent* with the First Amendment interests of the charities it represents." *Id.* at 958, 104 S.Ct. at 2848 (emphasis added); *see also id.* at 974, 104 S.Ct. at 2856 (Stevens, J., concurring) (emphasizing quoted language as primary justification for grant of third-party standing). We simply do not find this alignment of interests in the present case. The interests of Harris and the prison guards are not only inconsistent, but possibly in direct conflict. We cannot justify allowing a prison inmate to assert the rights of prison guards to challenge a policy intended in large part to protect those prison guards. If the prison guards wish to challenge the policy themselves, we see no obstacle inhibiting their ability to do so.

We hold that the district court lacked jurisdiction over Harris's challenge to the DOC policy. We therefore REVERSE the district court's denial of summary judgment and REMAND to the district court for dismissal based on lack of jurisdiction.

ANDERSON, Circuit Judge, concurring specially:

I concur and join the opinion for the court. I write separately to note one additional factor in support of our decision that Harris has failed to satisfy the final prong (relating to any hinderance to the third party's ability to protect the right) of the exception to the general rule against third-party standing. While there may be amongst Harris' allegations some implicit suggestion that prison employees' fear of adverse personnel action hinders their assertion of the right, such possibility, even if not remote, is mitigated by the fact that the Parole Board itself has both an interest, a duty and ample means to obtain all the information that would be of assistance in their decision-making process. Thus, I see no realistic risk that useful information is overlooked, or anybody's right to provide such information is infringed.

KRAVITCH, Circuit Judge, dissenting, in which HATCHETT, Circuit Judge, and CLARK, Senior Circuit Judge, join:

I agree with the majority opinion as it outlines the law of standing. I disagree, however, with the majority's application of the law to the facts of this case. The central purpose of the standing requirement, as expressed by the majority, is "to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly." Majority opinion at 1125. In my view, Harris's strong interest in having recommendations made to the parole board on his behalf ensures that he would properly frame this issue and vigorously advocate the First Amendment rights of the prison employees.

To have standing, a litigant must satisfy both the requirements of Article III of the Constitution which mandates that a case or controversy be presented, and prudential

considerations which are designed to properly limit the role of the federal courts. *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955, 104 S.Ct. 2839, 2846 (1984). The majority apparently concedes that Harris satisfies the Article III requirements, so our disagreement stems from the application of the prudential restraints against third-party standing to Harris. A litigant asserting third-party standing must demonstrate that he or she has suffered an injury-in-fact, that a close relationship with the third party exists and that there is some impediment to the third party's ability to assert his or her own rights.[1] *Powers v. Ohio*, 499 U.S. 400, 409–12, 111 S.Ct. 1364, 1370–71 (1991). I conclude that Harris satisfies each of those requirements and has third-party standing to litigate the First Amendment rights of the prison employees. Therefore, I respectfully dissent.

### I.

The majority determines that Harris has not alleged injury-in-fact. I disagree. Harris's complaint states: "I have asked employees that know me to write letters to the parole Board for me, but they say that they are ordered not to write any such letters and could face termination if they do so." As the majority recognizes, we are required to construe Harris's complaint in his favor for two distinct reasons. In "ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Further, complaints drafted by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by

lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). The majority holds that because Harris has not specifically alleged that there are employees who would write letters for him if the policy were not in place, he has not alleged injury-in-fact. However, the purpose of reading *pro se* complaints in a less stringent fashion is to prevent dismissals in cases such as this where, construing Harris's complaint in his favor, it is implicit that prison employees wish to write letters on his behalf but are prevented from doing so by the policy.[2] In my view, Harris alleges sufficient injury-in-fact in claiming that prison employees are prevented from writing to the parole board on his behalf. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973).

### II.

I also disagree with the conclusion of the majority that Harris lacks a sufficiently close relationship to the prison employees to be granted third-party standing. The requirement of a close relationship between the parties is designed to ensure that the litigant "is fully, or very nearly, as effective a proponent of the right" as the third party. *Singleton v. Wulff*, 428 U.S. 106, 115, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976). The relationship of the litigant and the third party is examined in the context of the right that the litigant is seeking to assert. Thus, in *Powers*, when the Supreme Court recognized a close relationship between litigants and venirepersons such that a defendant had third-party standing to assert the rights of prospective jurors, it did not hold that this close relationship existed generally; rather, it stated that on the issue of discrimination against

---

1. I do not address the issue of whether Harris should be entitled to the less stringent standing requirements sometimes afforded those asserting First Amendment claims, as I conclude that even under the stricter standard Harris has standing.

2. Further, to the extent that Harris's complaint is not clear with respect to this allegation, a remand for factual finding would determine whether there are prison employees that want to write letters on Harris's behalf. In this case, because

standing was not raised by the parties below, fact-finding was not conducted. As the Supreme Court has noted, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2207. The district court did not ask the parties for additional evidence before it concluded that Harris had standing. If further evidence is needed, a remand is the proper solution.

prospective jurors, the litigants' and venirepersons' interests were aligned. 499 U.S. at 414–16, 111 S.Ct. at 1373. In this case, Harris has established that he has a close relationship with the prison employees in that their interests in litigating the employees' right to directly communicate with the parole board are aligned.

Contrary to the contention of the majority that Harris does not claim that he enjoys a substantial relationship with the prison employees, Harris's complaint states that the policy, "is ridiculous because those who work with us daily, supervise us, etc., are the ones that KNOW the person I am. If those who KNOW us aren't permitted to write letters in our behalf then who else knows us and could do so?" Harris asserts a relationship with prison employees that is arguably closer than others in which third-party standing has been granted. See Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (criminal defendant may assert equal protection rights of prospective jurors); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (vendor of beer has standing to assert the equal protection rights of males between 18 and 20). Harris has alleged a relationship with the prison employees that would justify third-party standing on this issue.

The majority determines that Harris, because he is a prison inmate, necessarily has an adversarial relationship with prison employees. The basis for the majority's conclusion is unclear. The only evidence in the record that reflects the relationship between inmates and prison employees is the assertion in Harris's complaint, quoted above, that

Harris had a close relationship with the prison employees.[3] Although in certain contexts inmates and prison employees would be in an adversarial relationship, here there is a congruence of interests between the rights of the employees to communicate directly with the parole board and Harris's desire that prison employees be permitted to write on his behalf.

### III.

The third factor to be considered in deciding whether to grant third-party standing is whether there is some hindrance to the third party's ability to protect his or her own interests. Harris's complaint also demonstrates that there might exist impediments to the prison employees' ability to litigate their own claim. The employees approached by Harris about writing letters on his behalf responded that if they wrote such letters they could be terminated. The fear of adverse job action is a barrier to litigating this claim. Additionally, the Court noted in Powers that practical considerations such as "the small financial stake involved and the economic burdens of litigation," present considerable barriers to litigation because there may be "little incentive to set in motion the arduous process needed to vindicate" the right. 499 U.S. at 415, 111 S.Ct. at 1373. In this case, as in Powers, the third parties, here prison employees, face considerable obstacles and have little incentive to induce them to assert their rights. The majority states that the only reason that it can fathom for the failure of the prison employees to challenge the policy is that they support the policy.[4] I have suggested two other reasons.

---

3. The appellants, in contending that Harris should not be granted standing, do not argue that the inmate-prison employee relationship was adversarial. Further, assuming that the majority would admit that an employee could desire to write a letter on Harris's behalf, it is unclear why this relationship would be categorized as adversarial in this context. To the extent that the majority believes that an adversarial relationship exists, because there is no evidence in the record to support such a conclusion, the proper solution would be to remand this case so that evidence could be presented on this issue.

4. The majority reasons that perhaps the prison employees have not challenged the policy because they support it, further speculating that the employees view the policy as protecting them from disgruntled prisoners. This seems unlikely in view of the fact that the prison employees already indirectly communicate with the parole board through documents such as performance and work reports, program involvement and disciplinary reports forwarded to the board when the inmate is considered for parole. The current policy only forbids direct communication. If the employees could be subject to such hostility from inmates as a result of direct communication, they

## IV.

Harris has alleged facts sufficient to satisfy all of the constitutional and prudential standing requirements. Accordingly, I would hold that the district court had jurisdiction to consider the claim on the merits.

could equally be subject to hostility based upon    other reports.