[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10460

Non-Argument Calendar

_____

WAYNE JOHNSON FOR CONGRESS, INC.,
WAYNE JOHNSON,

Plaintiffs-Appellants,

*versus*

JEREMY C. HUNT,
d.b.a. Jeremy for Georgia,
FOX NEWS NETWORK, LLC,
BRIAN M. KILMEADE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:22-cv-00118-CDL

_____

Before WILSON, BRANCH, AND LUCK, Circuit Judges.

PER CURIAM:

Wayne Johnson and Jeremy C. Hunt ran in the Republican primary during the 2022 election cycle for the opportunity to challenge Representative Sanford Bishop for his seat representing Georgia's Second Congressional District.  Neither won: Johnson lost in the first round of the Republican primary, and Hunt lost in a run-off.  But this case is not about election day.  Rather, it is about an alleged racketeering scheme to promote Hunt's campaign at the expense of Johnson and his other opponents.

Johnson and "Wayne Johnson for Congress, Inc." (collectively "Johnson") allege that Hunt, his campaign "Jeremy for Georgia," Fox News Network, LLC ("Fox"), and on-air talent Brian M. Kilmeade (hereinafter "Fox and Hunt") engaged in a mail and wire fraud racketeering scheme in which they conspired to flip a Democratic seat in the U.S. House of Representatives by promoting Hunt on Fox during Georgia's 2022 primary election. After Johnson sued, Fox and Hunt removed the case to federal court and then moved to dismiss for failure to state a claim. Johnson moved to amend the complaint.  The district court granted the motion to dismiss and denied the motion to amend,

finding that Johnson did not plausibly allege that Fox and Hunt engaged in a wire and mail fraud racketeering scheme that resulted in compensable damages to Johnson.

We conclude that neither the original complaint nor the proposed amended complaint alleges a fraudulent racketeering scheme against Johnson. After review, we affirm the district court's decision.

## I.    Background

Wayne Johnson and Jeremy Hunt were two (of many) candidates in the 2022 Republican primary election for Georgia's Second Congressional District. After Johnson lost in the first round of the primary election, he sued Fox and Hunt in the Superior Court of Muscogee County, Georgia, claiming violations of the federal and Georgia Racketeer Influenced and Corrupt Organizations statutes ("RICO"). 18 U.S.C. § 1962(c); O.C.G.A. § 16-14-1 *et seq*. Specifically, Johnson alleges that Hunt was selected by Senator Tom Cotton to participate in a national "Veterans to Victory" program "to elect Republican military veterans to Congress." The program, in part, connects its "chosen candidates" with Fox "for media appearances." As relevant here, Fox hosted Hunt at least twelve times, sometimes as a guest of Kilmeade, over a span of five months.

In an initial segment, Hunt "announced his candidacy . . . with significant fanfare." In later appearances, emphasizing his status as a West Point graduate and his experience serving as an Army Captain, Hunt commented on politics, national

security, and foreign affairs.  He often segued into discussions about his campaign and provided his website to solicit donations from viewers.

Hunt's airtime on Fox provided him with the opportunity to "raise[] substantial sums of money from a broad-based national audience[.]"  According to Johnson, Fox did not offer similar opportunities to the other candidates running in the Republican primary.  For example, Johnson appeared on Fox one time, and neither he nor the on-air personality accompanying him encouraged viewers to contribute to Johnson's campaign.

Only once during Hunt's appearances on Fox did he and the Fox on-air talent acknowledge the other candidates running in the primary election.  In that acknowledgment, Hunt discussed the runoff with Chris West and "the endorsements he had collected over []West and Representative Sanford Bishop," who the winner of the runoff would face in the election for the House seat.

Johnson maintained that throughout Hunt's campaign, Fox "routinely promoted" Hunt "as being a native of Columbus, Georgia, and thereby Georgia's Second Congressional District," even though Hunt grew up in the metro-Atlanta area.  Hunt's closest connection to Columbus prior to his campaign was a three-week "temporary duty assignment to Fort Benning [near Columbus] for Airborne Jump School[.]"  More recently, Hunt leased an apartment in Columbus.

In sum, Johnson argued that Fox and Hunt engaged in a mail and wire fraud racketeering scheme in which they "hoodwink[ed]"

voters with "misrepresentations, omissions, and deceptions," ultimately neglecting alternative Republican primary candidates like Johnson. Under this scheme, Hunt purportedly proposed reasons to appear on Fox News, conferred with Kilmeade and other Fox employees, and then "appear[ed] under such false pretenses of a discussion about a news event, only to quickly and easily navigate, with complicity of the hosting talent, conversations to a discussion of [his] Congressional campaign, directing viewers from all across America to his website where they [could] contribute to his campaign." According to Johnson, this scheme "deprived Georgia voters of meaningful participation in their . . . Congressional Republican election[.]" Johnson also alleges that he was "harmed by the deprivation of equal access to . . . Fox News." As for damages, Johnson requested "an award equaling the fair market value" of Hunt's airtime on Fox and "an award equaling the contributions made to [Hunt] that can be directly tied to donations made as a result of" the alleged racketeering scheme.

Pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, Fox and Hunt timely removed the action to federal court based on federal question jurisdiction. Fox and Kilmeade then moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), joined fully by Hunt, arguing that Johnson failed to plead any racketeering activity under federal or Georgia RICO statutes and failed to plead damages.

Johnson later moved to amend the complaint. The proposed amended complaint added slightly more detail regarding: Hunt's

campaign, Fox and Hunt's decision not to reference Hunt's opponents, Fox's alleged violations of the Equal Time Rule, and Fox's support of Republican candidates in other primaries in 2022. It also included two new predicate acts under Georgia's RICO statute: perjury and false swearing.

The district court granted Fox and Hunt's motion to dismiss and denied Johnson's motion for leave to amend.[1] First, in granting the motion to dismiss, the court determined that "the [alleged] exaggeration of Hunt's national security credentials, the misleading characterization of his connection to the district, and the concealment of the contested nature of the Republican primary" did not "plausibly allege the two predicate acts of wire and mail fraud" and "there [was] no resulting injury to [Johnson]." The court added that the alleged misrepresentations—which were directed at the voters, not at Johnson—did not support an actionable case of fraud based on "misrepresentations to a third party" under Supreme Court precedent.

Second, turning to the motion for leave to amend, the district court concluded that "the[] deficiencies in [the] complaint [were] not fixable." Because "allowing [Johnson] to amend the[]

---

[1] Following removal, Johnson moved to remand the action, arguing that in his proposed amended complaint, "the Georgia RICO claims . . . clearly and substantially predominate over the Federal RICO claims." While the district court did not explicitly address Johnson's motion to remand, the court stated it "ha[d] jurisdiction based on federal question jurisdiction."

complaint would be futile," the court denied the motion for leave to amend.

Johnson timely appealed the dismissal of his claims and the denial of his motion for leave to amend.

## II.    Discussion

Johnson argues on appeal that the district court erred when it (1) concluded that his complaint failed to properly allege mail and wire fraud under federal and Georgia RICO statutes and (2) denied his motion for leave to amend. After review, we conclude that the district court properly dismissed Johnson's complaint for failure to state a claim and properly denied his motion for leave to amend. We therefore affirm the district court's decision.

### A.  Standard of Review

"We review *de novo* the dismissal of a civil RICO complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); Fed. R. Civ. P. 12(b)(6). We "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). Yet labels, conclusions, and formulaic recitations of the elements "will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

8                    Opinion of the Court                    23-10460

"We review a district court's denial of leave to amend a complaint for an abuse of discretion." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

We first address whether Johnson has plausibly alleged civil violations of federal and Georgia RICO statutes. We then turn to whether the district court properly denied Johnson's motion for leave to amend the complaint.

## B. *Whether Johnson plausibly alleged violations of federal and Georgia RICO statutes.*

We must first address whether Johnson's factual allegations, when taken as true as required at the pleadings stage, sufficiently allege mail and wire fraud under federal and Georgia RICO statutes. The district court concluded that they did not.[2] We

---

[2] The parties debate whether the district court applied the correct standard when dismissing Johnson's complaint for failure to state a claim. Johnson argues that "[t]he district court erred by not construing the facts set forth in the Complaint as true and in [Johnson's] favor" because, if the district court had done so, "it should have found that the Complaint set forth the necessary factual allegations" to establish his case. Fox and Hunt argue that the district court "undeniably applied the correct formulation" of the law.

We agree with Fox and Hunt that the district court applied the correct legal standard. In its analysis, the court appropriately focused on whether the complaint satisfied the facial "plausibility standard" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)— the two cases that formed the pleading standard. Therefore, concluding that the district court applied the correct standard, we focus our analysis on whether the complaint plausibly alleged civil violations of federal and Georgia RICO statutes.

23-10460                Opinion of the Court                    9

agree.[3]

We start, as we must, with the statutes.  "The federal and Georgia racketeering acts are essentially identical[.]"  *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir. 2017) (quotations omitted)).  Under the federal[4] and Georgia[5] statutes, a plaintiff

---

[3] The district court also criticized Johnson's decision to allege that the fraud was directed at voters rather than him.  While the court acknowledged that, under Supreme Court precedent, there are "some circumstances [where] misrepresentations to a third party could be actionable," it concluded that those "circumstances [were] not present here."  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008).  Because we conclude that the district court properly determined that Johnson's allegations of mail and wire fraud do not meet the pleading requirements regardless of who the alleged fraud was directed at, we need not evaluate Johnson's third-party reliance theory.

[4] Under the federal RICO statute, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).

[5] Georgia's RICO law provides:

> (a) It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

> (b) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

> . . . .

10                    Opinion of the Court                    23-10460

must prove that a defendant participated in an unlawful enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c); O.C.G.A. § 16-14-4(b). Racketeering activity may include the predicate acts of mail and wire fraud. 18 U.S.C. § 1961(1); O.C.G.A. § 16-14-3.[6]

We have said that the predicate acts of mail and wire fraud "occur[] when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental Ass'n*, 605 F.3d at 1290. "Under the mail and wire fraud statutes, a plaintiff only can show a scheme to defraud if he proves that some type of deceptive conduct occurred." *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521 (11th Cir. 2000) (quotations omitted). Such deceptive conduct includes "knowingly making false representations," "concealing material facts," and making statements "with reckless indifference to their truth or falsity." *United States v. Sawyer*, 799 F.2d 1494, 1502 (11th Cir. 1986) (citations omitted).

When a complaint "is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, the[] substantive RICO allegations must comply . . . with [Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard." *Am. Dental Ass'n*, 605 F.3d at 1291.

---

O.C.G.A. § 16-14-4.

[6] O.C.G.A. § 16-14-3(5)(C) says that "'[r]acketeering activity' shall . . . mean any conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961 (1)[.]"

Rule 9(b)'s heightened pleading standard requires that "a party must state with particularity the circumstances constituting fraud[.]" *Id.* (quotations omitted).  To satisfy Rule 9(b) in the RICO context, "a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* (quotation omitted). Our analysis starts and ends at the first step.

Johnson purports to be proceeding under both mail and wire fraud.  Although Johnson lists each of Hunt's appearances on Fox during his campaign, Johnson only broadly alleges that Fox and Hunt defrauded him through "misrepresentations, omissions, and deceptions[.]"  He does not show any actual fraud committed by Fox and Hunt.  *See Am. Dental Ass'n*, 605 F.3d at 1291–93 (stating that although "Plaintiffs' complaint provides a list of mailings and wires," it never "identif[ies] any actual fraud" and therefore the complaint "does not plausibly . . . allege a pattern of racketeering activity predicated on a scheme to commit acts of mail and wire fraud").

As best we can tell, Johnson appears to argue that Fox and Hunt committed mail and wire fraud in two ways.[7]  First, Johnson

---

[7] Johnson also complains that Fox did not offer similar opportunities to the other candidates running in the Republican primary.  But he concedes that violations of the Equal Time Act—which says all "legally qualified candidate[s] for any public office" should be given "equal opportunities" to use broadcasting stations—do not constitute predicate acts for the RICO claims.

12                 Opinion of the Court                23-10460

seems to be alleging that Fox committed fraud by not sufficiently acknowledged the other candidates running in the primary election. But Fox has no affirmative obligation to name other candidates and Johnson cites no law suggesting otherwise. Second, Johnson implies that Fox and Hunt misrepresented Hunt's ties to the district because they promoted Hunt as "a native of Columbus, Georgia," even though Hunt grew up in the metro-Atlanta area. But Johnson does not show how incorrectly stating that Hunt is from Columbus—while admitting that he had been stationed at Fort Benning near Columbus and more recently signed an apartment lease in Columbus—amounts to the concealment of material facts. *Sawyer*, 799 F.2d at 1502. Nor has he shown that Fox and Hunt's "false" statements were "knowingly" made or made "with reckless indifference to their truth or falsity." *Id.* Thus, because Johnson cannot point to any "precise . . . misrepresentations" that amount to fraudulent conduct committed by Fox and Hunt, *see Am. Dental Ass'n*, 605 F.3d at 1291, we conclude that Johnson failed to allege the predicate acts of mail and wire fraud with the heightened specificity required by Rule 9(b).[8]

---

*See* 47 U.S.C. § 315(a). And there is no private cause of action for violations of the Equal Time Act. *Belluso v. Turner Commc'ns Corp.*, 633 F.2d 393, 397 (5th Cir. 1980); *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions from the Fifth Circuit Court of Appeals issued before September 30, 1981, are binding precedent in the Eleventh Circuit).

[8] Furthermore, to the extent that Johnson is asserting claims on behalf of voters, he lacks standing to do so. "[W]e must consider [standing issues] as a

### C.  *Whether the district court erred in denying Johnson's motion for leave to amend.*

We next turn to whether the district court erred in denying Johnson's motion for leave to amend the complaint.  Johnson argues that allowing the proposed amendment would not be futile because the amended pleading (1) adds factual allegations that further prove the elements of federal and Georgia RICO claims and (2) adds perjury and false swearing as predicate acts under Georgia's RICO statute.  The district court said that "the[] deficiencies in [the] complaint [were] not fixable," and thus "allowing [Johnson] to amend [his] complaint would be futile."

We conclude that the district court did not abuse its discretion in denying Johnson's motion for leave to amend the complaint.  *See Chabad Chayil, Inc.*, 48 F.4th at 1229.  A motion for leave to amend may be denied "where amendment would be futile."  *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014).  Amendment would be futile "when the complaint as amended is

---

threshold matter, regardless of whether the parties or the court below has done so."  *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 n.3 (11th Cir. 2003).  To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  This Court recognizes "the general principle that a litigant must assert his own legal rights and interests and may not ordinarily rely on the rights and interests of third parties."  *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994).  Because no exceptions to this general rule apply, *see id.* at 1122 (naming exceptions), Johnson only has standing to challenge an injury he suffered.

still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quotations omitted).

Johnson's proposed amended complaint "[tells] essentially the same story" as the operative complaint. *See Crawford's Auto Ctr., Inc., v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019). His proposed changes fail to improve upon the original complaint for two reasons.

First, the proposed amended complaint still does not show a fraudulent scheme. Instead, the only substantive changes to the complaint relating to Johnson's mail and wire fraud claims add slightly more detail regarding: Hunt's campaign announcement, Fox and Hunt's promotion of Hunt's campaign and website, Fox and Hunt's promotion of Hunt without reference to other Republican candidates, Fox's alleged violations of the Equal Time Rule, and Fox's support of Republican candidates in other primaries in 2022. But none of these changes show any actual fraud committed by Fox and Hunt.

Second, at best, the proposed amended pleading adds new perjury and false swearing claims under Georgia law. But again, these changes do nothing to cure the operative complaint of its deficiencies. Without amending or improving upon the federal and state mail and wire fraud claims, all that remains are the perjury and false swearing state law claims. While the district court had the discretion to allow Johnson to amend his complaint to introduce these two state law claims, it also had the discretion not to. *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th

Cir. 1997) ("[T]he Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the Court has dismissed all claims over which it had original jurisdiction, but is not required to dismiss the case."). While the district court did not explicitly say so, it did not exercise its discretion over the remaining state law claims in dismissing the complaint and denying the motion to amend. We discern no abuse of discretion.

Because the proposed amended complaint would not survive a motion to dismiss for failure to state a claim, amendment would be futile. We agree with the district court's decision to deny Johnson's motion for leave to amend.

### III.    Conclusion

Accordingly, for the above reasons, the district court did not err in dismissing Johnson's complaint for failure to state a claim and denying his motion for leave to amend his complaint.

**AFFIRMED.**