**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-20033

(Summary Calendar)
_____

ANTONIO M LACY and
DAVID ALLEN WALLIS,

Plaintiffs-Appellants,

versus

JAMES A COLLINS,
Director, Texas Department
of Criminal Justice, Institutional
Division, ET AL.,

Defendants-Appellees.

_____

Appeal from the United States District Court
For the Southern District of Texas
CA H 94 2515
_____
August 8, 1995

Before SMITH, EMILIO M. GARZA, and PARKER, Circuit Judges.

PER CURIAM:[*]

Antonio Lacy, an inmate of the Texas Department of Criminal Justice's Institutional Division, appeals the district court's dismissal, under 28 U.S.C. § 1915(d) (1988), of his pro se, in forma pauperis civil rights suit. We affirm.

---

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Antonio Lacy filed a complaint under 42 U.S.C. § 1983 (1988), alleging that the conditions of his confinement violate his Eighth Amendment rights. Specifically, Lacy alleges that prison officials (1) allow HIV-positive inmates to masturbate and ejaculate in the prison dayroom, contaminating the drinking fountain and other surfaces; (2) allow inmates to expose themselves to female employees, potentially discouraging the female employees from responding to inmates' emergency calls; (3) allow inmates to use vulgar and indecent language in speaking to prison employees and other inmates; and (4) allow inmates to play televisions and radios at high volume. In his complaint, Lacy alleged that prison officials do not enforce prison regulations designed to prevent these problems, despite his and other inmates' complaints. After Lacy responded to an Order for a More Definite Statement, the district court dismissed Lacy's complaint as frivolous under 28 U.S.C. § 1915(d), concluding that all four claims had no arguable basis in law. Lacy appeals, arguing that the district court abused its discretion in dismissing his complaint under § 1915(d).

A district court may dismiss an in forma pauperis complaint as frivolous under § 1915(d) if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L. Ed. 2d 338 (1989); *Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994). "A complaint is legally frivolous if it is premised on an `indisputably meritless legal theory.'" *Boyd v.*

*Biggers*, 31 F.3d 279, 281-82 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327, 109 S. Ct. at 1833); *see also Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992) (reversing § 1915(d) dismissal based on "potentially erroneous legal conclusions" (citing *Neitzke*, 490 U.S. at 328-30, 109 S. Ct. at 1833-34)).  We review a district court's § 1915(d) dismissal of an in forma pauperis complaint for abuse of discretion.  *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733-34, 118 L. Ed. 2d 340 (1992).  We consider whether "(1) the plaintiff is proceeding pro se, (2) the court inappropriately resolved genuine issues of disputed fact, (3) the court applied erroneous legal conclusions, (4) the court has provided a statement of reasons which facilitates `intelligent appellate review,' and (5) any factual frivolousness could have been remedied through a more specific pleading."  *Moore*, 976 F.2d at 270 (quoting *Denton*, 504 U.S. at 34, 112 S. Ct. at 1734).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, ___ U.S. ___, ___, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993).  "[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, `sufficiently serious.'"  *Farmer v. Brennan*, ___ U.S. ___, ___, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)).  Second, the prison official must have acted with "deliberate indifference." *Id.* at ___, 114 S. Ct. at 1977 (quoting *Wilson*, 501

U.S. at 302-303, 111 S. Ct. at 2326).

> [A] prison official can[] be found liable under the
> Eighth Amendment for denying an inmate humane conditions
> of confinement [if] the official knows of and disregards
> an excessive risk to inmate health and safety; the
> official must both be aware of facts from which the
> inference could be drawn that a substantial risk of
> serious harm exists, and he must also draw the inference.

*Farmer*, ___ U.S. at ___, 114 S. Ct. at 1979. Whether a prison official had the requisite knowledge "is a question of fact subject to demonstration in the usual ways, including inferences from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at ___, 114 S. Ct. at 1981 (citations omitted).

A

Lacy claims that prison officials created unconstitutional conditions of confinement by allowing HIV-positive inmates to masturbate and ejaculate in the prison dayroom, placing other inmates at risk of contracting the HIV virus. The district court dismissed this claim on the grounds that prison administrators are accorded wide discretion in running their institutions, including decisions regarding measures taken to protect inmates from contracting communicable diseases, unless any failure to so protect inmates represents an omission sufficiently harmful to evidence deliberate indifference to serious medical needs.

Lacy may show that prison officials have been deliberately indifferent to the risk created by HIV-positive inmates' ejaculating in the prison dayroom only by showing that the

officials have been aware of the inmates' conduct and understand that the conduct creates a substantial risk that other inmates will contract the HIV virus. *See Farmer*, ___ U.S. at ___, 114 S. Ct. at 1979. Lacy explicitly alleged in the district court that he had complained about the inmates' conduct to the prison officials. However, in order to grant relief, we must infer that the risk created by the inmates' alleged conduct is obvious. *See Farmer*, ___ U.S. at ___, 114 S. Ct. at 1981 (holding that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). There is no allegation that any individual has contracted the HIV virus from the dayroom environment, nor is there any basis for believing that the conduct complained of, without more, creates a serious medical need for official intervention. We are not prepared to hold, as a matter of law, that the alleged conduct creates an obvious risk that other inmates will contract the HIV virus.

In *Moore v. Mabus*, 976 F.2d 268 (5th Cir. 1992), in reviewing the § 1915(d) dismissal of a similar suit, we discussed prisoner complaints of "serious constitutional violations related to the `range of difficult, AIDS-related issues that confront all correctional officials, administrators, policymakers and inmates as they attempt to grapple with the problems engendered by the presence of HIV infection in our nation's prisons and jails.'" *Id.* at 271 (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1499 (11th Cir.

1991)).[1]  We acknowledged that reviewing such claims does not "involve the mere application of well-settled principles of law," and reversed the district court's § 1915(d) dismissal of the AIDs-related claim.  *Id.*  However, alleging exposure to the HIV virus is not a magic incantation that relieves a litigant from the established constructs of Eighth Amendment law.  The facts as alleged by Lacy do not implicate Eighth Amendment concerns.  Lacy neither identifies the serious medical needs that he believes prison officials have been indifferent to, nor is the risk obvious.

**B**

Lacy also argues that prison authorities have violated the Eighth Amendment by allowing inmates to expose themselves to female prison employees, which he claims will result in the female employees' not responding to inmates' emergency calls.  As support for his claim, Lacy contends that female employees have already failed to perform routine security checks in his cell block.[2]  The

---

[1]  Other circuits have also recognized these difficulties.  *See Gates v. Rowland*, 39 F.3d 1439, 1447 (9th Cir. 1994) (deferring to prison policy of excluding HIV infected inmates from food service for several reasons, such as easing fears of inmates and as precaution against spreading infection when risks are slight or unknown); *Harris*, 941 F.2d at 1519-20 (noting that "high risk behavior occurs disproportionately in prison systems," requiring prison officials to establish effective infection-control policies); *Muhammad v. Carlson*, 845 F.2d 175, 179 (8th Cir. 1988) (upholding constitutionality of prison policy requiring segregation of HIV-infected inmates, in part because of court's "reluctance to hinder prison officials' attempts to cope with the extraordinarily difficult problems AIDS poses in a prison setting"), *cert. denied*, 489 U.S. 1068, 109 S. Ct. 1346, 103 L. Ed. 2d 814 (1989).

[2]  We do not address whether the female employees' alleged failure to conduct security checks is violative of the Eighth Amendment, because Lacy did not bring this claim in his petition.  "Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved."  *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (quoting *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988)) (citations omitted).

district court dismissed Lacy's claim as overly speculative.

To have standing to bring his claim that prison authorities' conduct has resulted in inmate conduct that might lead to allegedly unconstitutional behavior on the part of female prison employees, Lacy must show that he meets the standing requirements set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992):

> First, the plaintiff must have suffered an injury in fact))an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of))the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Accord Ass'n for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 243 (5th Cir. 1994). Lacy fails to meet these requirements because his claim that female prison employees will refuse to answer emergency calls is conjectural and hypothetical.[3] To the extent that it is not, the likelihood that requiring prison guards to increase their enforcement of prison regulations against inmates' publicly exposing themselves will affect female employees' response to

---

[3] In order for a claim to be ripe, the plaintiff "must show that he `has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both `real and immediate,' not `conjectural' or `hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983).

emergency calls is speculative at best.[4]  Thus, the district court did not abuse its discretion in concluding that this claim has no arguable basis in law.[5]

C

Finally, Lacy contends that prison officials created unconstitutional conditions of confinement by failing to control the inmates' use of vulgar language and the volume at which they play their radios and televisions.  A prison condition violates the Eighth Amendment only if it is so serious that it deprives prisoners of the "`minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (quoting

---

[4]    In order for Lacy to have standing to bring this claim under Article III of the Constitution, the alleged injury "must be `fairly' traceable to the challenged action, and relief from the injury must be `likely' to follow from a favorable decision." *Allen v. Wright*, 468 U.S. 737, 751, 758, 104 S. Ct. 3315, 3324, 3328, 82 L. Ed. 2d 556 (1984) (holding that it was overly speculative as to whether enforcement of Internal Revenue Service rules which prohibited tax breaks to racially discriminatory private schools would prevent segregated schools, because withdrawal of tax breaks may not convince these private schools to change policies or parents to transfer their children to nonsegregated schools); *accord National Treasury Employees Union v. Department of Treasury*, 25 F.3d 237, 241 (5th Cir. 1994); *see also Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 43-44, 96 S. Ct. 1917, 1926-27, 48 L. Ed. 2d 450 (1976) (holding that it was overly speculative to conclude that suspending tax benefits to private hospital would force hospital to take on more indigent patients).

[5]    *See Rocky v. King*, 900 F.2d 864, 871 (5th Cir. 1990) (characterizing inmate's § 1983 claim that prison officials' failure to provide toilet and hand-washing facilities for inmates working in fields violated his Eighth Amendment rights as possibly deficient for standing purposes because it was overly speculative that inmate's glaucoma condition would improve to enable him to be assigned field work, before remanding to district court for dismissal on other grounds); *Lamar v. Whiteside*, 606 F.2d 88, 88 (5th Cir. 1979) (dismissing inmate's claim, which contended that employees hired by prison's alleged discriminatory hiring practices would discriminate against minority inmates and cause psychological harm, as too speculative to enable inmate to have standing); *see also Harris v. Evans*, 20 F.3d 1118, 1122 (11th Cir.) (holding that pro se inmate lacked standing to bring § 1983 claim because he could not show actual injury from prison's policy of refusing to allow employees to write letters of recommendation for inmates, as he did not show that prison employee would have actually written him a letter), *cert. denied*, ___ U.S. ___, 115 S. Ct. 641, 130 L. Ed. 2d 546 (1994).

*Harris v. Angelina County, Tex.*, 31 F.3d 331, 334 (5th Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991))).  Because Lacy has not alleged such a deprivation from the inmates' use of vulgar language,[6] we conclude that the district court did not abuse its discretion in dismissing that claim.  Lacy also alleges that the loud noise from the radios and televisions deprived him of needed sleep, and the ability to concentrate on reading materials.[7]  To the extent that Lacy contends that the excessive noise violates prison rules, he fails to allege a constitutional violation.  *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("[T]he mere failure of the TDC officials to follow their regulations" is not a constitutional violation.).

Nor does Lacy's contention of excessive noise rise to the level of an Eighth Amendment violation.  Conditions of confinement

---

[6]     Lacy alleges only that a reasonable person would deem the inmates' use of vulgar language to be excessive noise which creates disturbance in the living area.

[7]     Lacy stated in his complaint that:

Inmates living near Plaintiffs are regularly permitted to play their personal radios at sound levels which completely infiltrate the cell of Plaintiffs, and at volume levels which can be heard into the cell of Plaintiffs which is located up to 50 or 60 feet away from the cell(s) in which such personal radios of inmates are located; and at volume levels which a reasonable person with ordinary hearing and intelligence would consider loud, raucous, and substantially in excess of low volume.  The television(s) located in the dayroom on the cellblock in which Plaintiffs are assigned to live are constantly played at a loud, raucous volume level and can be clearly heard in an excessive manner into the cell of Plaintiff which is located a substantial distance from the dayroom, and at a level of sound which a reasonable person would consider substantially above a low volume of sound.  As a direct result of the institutionally-violative television and radio volume levels that exist on a daily basis for up to sixteen hours, Plaintiffs are deprived of needed rest and sleep, deprived of the ability to concentrate on reading materials.

which do not lead to deprivations of essential food, medical care, or sanitation do not amount to an Eighth Amendment violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation."). Lacy fails to allege any injury stemming from the excessive noises or from any sleep deprivation. Accordingly, we conclude that the district court did not abuse its discretion in dismissing that claim. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (a few hours of periodic loud noises that merely annoy, rather than injure, the prisoner does not state a constitutional claim).

### III

For the foregoing reasons, we AFFIRM the district court's judgment.