Stewart G. Abrams, Asst. Federal Public Defender, Miami, FL, for appellant.

Lewis P. Carey, Jr., Monique V. Perez, Linda C. Hertz, Harriett R. Galvin, Asst. U.S. Attys., Miami, FL, for appellee.

Before TJOFLAT, Chief Judge, and HATCHETT and CARNES, Circuit Judges.

PER CURIAM:

Having been convicted on a guilty plea to one count of possession of unregistered firearms, Donald Justice appeals his sentence, which resulted from an application of §§ 2K2.1(a)(5) and 2K2.1(b)(3) of the United States Sentencing Guidelines. Pursuant to § 2K2.1(a)(5), Justice initially was assigned a base offense level of 18, because his "offense involved a firearm listed in 26 U.S.C. § 5845(a);" more specifically, his offense involved grenades which are destructive devices, one of the several types of firearms listed in § 5845(a). *See* U.S.S.G. § 2K2.1(a)(5) & comment. (n. 5); 26 U.S.C. § 5845. Because grenades also fall into the special firearms category of "destructive devices," pursuant to § 2K2.1(b)(3) Justice's base offense level was enhanced another two points, resulting in a base offense level of 20. Justice contends that the combined application of §§ 2K2.1(a)(5) and 2K2.1(b)(3) constitutes impermissible double counting of his offense conduct. We disagree.

The commentary accompanying § 2K2.1 directs a sentencing judge to apply both subsections (a)(5) and (b)(3) when calculating the sentence of a defendant whose offense involved a destructive device. Application Note 11 explains:

A defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a)

(*e.g.*, subsection ... (a)(3) ...), and a two-level enhancement under subsection (b)(3). Such devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons.

U.S.S.G. § 2K2.1, comment. (n. 11). The "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, *that guideline.*" *Stinson v. United States*, — U.S. —, —, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) (emphasis added). Justice does not argue that Note 11 violates the Constitution or a federal statute. Nor does he contest the fact that Note 11 clearly comports with the plain language of § 2K2.1. Instead, he contends that Note 11 conflicts with *other* guidelines and their commentary which restrict double counting. Thus, Justice fails to address what is the critical question under *Stinson*: whether a guideline's commentary contradicts *that* guideline. Having conducted our own review of the relevant guideline and commentary, we conclude that Note 11 is not "'plainly erroneous or inconsistent with'" § 2K2.1. Accordingly, the application note controls our determination of this case, *see Stinson*, — U.S. at —, 113 S.Ct. at 1920, and we reject Justice's contention.

AFFIRMED.

Myrna J. HAUSER, James A. Hauser, Plaintiffs–Appellants,

v.

LIFE GENERAL SECURITY INSURANCE COMPANY, Defendant–Appellee.

No. 93–4312.

United States Court of Appeals, Eleventh Circuit.

July 3, 1995.

As Amended on Denial of Rehearing Sept. 15, 1995.

Richard F. O'Brien, III, Hall and O'Brien, P.A., Miami, FL, for appellants.

Maxine M. Long, Phillip G. Newcomm, Shutts & Bowen, Raoul G. Cantero, Adorno & Zeder, P.A., Miami, FL, for appellee.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

The Appellants, Myrna J. and James A. Hauser, brought suit in district court to recover benefits under a medical insurance plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* The district court granted summary judgment in favor of the Appellee, Life General Security Insurance Company, finding that the group health insurance dependent coverage for Myrna J. Hauser was void *ad initio* due to material misrepresentations and omissions on the application for such coverage. The Hausers then filed this appeal. Because we find that genuine issues of material fact exist, we REVERSE the district court's grant of summary judgment and REMAND this case for trial.

## I. FACTS AND PROCEDURAL HISTORY

James A. Hauser and Myrna J. Hauser were married on May 12, 1991. On or about May 14, 1991, Mr. Hauser notified Life General Security Insurance Company ("Life General") of the marriage and added Myrna J. Hauser as a dependent for health insurance coverage with the group policy carried by his law firm, Hauser and McSurdy, P.A.

Mr. Hauser contends that he answered the questions on the insurance application form based on the information Mrs. Hauser pro-

vided to him. In Mr. Hauser's affidavit in opposition to summary judgment he stated that: "I recall going over each question on the application over the telephone with my wife.... I went over each question presented in the application with her and responded to each question based upon what I had been told and the information I had been given by my wife." The application contains a clause before the signature line that reads, in part, as follows: "I declare that all of the statements contained in this application are, *to the best of my belief and knowledge,* true and correct and that no material information has been withheld or omitted concerning the past or present state of health of myself or my dependents, and that any misstatements or omissions shall make my insurance based on this application void at the option of the insurer...." (emphasis added). Mr. Hauser signed the application; Mrs. Hauser did not. On June 1, 1991, Life General accepted Mrs. Hauser as an insured dependent.

Later that month, Mrs. Hauser experienced flu symptoms and consulted her physician when the symptoms did not dissipate. In July of 1991, Mrs. Hauser's physicians discovered that she was experiencing chronic kidney failure. In August 1991, Mrs. Hauser entered the hospital to begin dialysis and to undergo surgical procedures incident to the kidney failure. The Hausers submitted a claim for payment of the medical bills to Life General. After investigating the claim and obtaining Mrs. Hauser's medical records, Life General denied coverage. Life General rescinded dependent coverage for Myrna J. Hauser based on what it perceived to be misrepresentations and omissions of material facts about her medical history on the insurance application. Specifically, Life General contended that the Hausers were guilty of misrepresentations and omissions in answering questions under the "Evidence of Insurability" portion of the application pertaining to the following conditions regarding Mrs. Hauser's medical background:

1. Representing that Mrs. Hauser had only "regular checkups" within the five years prior to the date of the application;

2. Failing to disclose that Mrs. Hauser was receiving medical treatment, including psychiatric treatment, at the time of the application;

3. Failing to disclose that Mrs. Hauser was taking medication at the time of the application;

4. Failing to disclose that Mrs. Hauser had consulted a physician, had surgery, and had medical treatment recommended within the last five years;

5. Failing to disclose that, within the last five years, Mrs. Hauser had had indication or diagnoses of kidney, bladder, and/or liver disorders, including recurrent bladder infections, chronic hepatitis, and indications of kidney failure;

6. Failing to disclose that Mrs. Hauser had been diagnosed as having an emotional disorder and was under continuing treatment by a psychiatrist;

7. Failing to disclose that Mrs. Hauser had been diagnosed and treated for hyperlipidemia within the past five years, and had blood cholesterol levels of 400, which is more than double the high end of the normal range for blood cholesterol;

8. Failing to disclose that Mrs. Hauser had consulted with specialists including a cardiologist, a kidney specialist, and others concerning her various medical conditions; and

9. Failing to disclose that Mrs. Hauser had incurred medical expenses in excess of $5,000 during the previous twenty-four months.

In this appeal, the Hausers contend that Mr. Hauser filled out the application "to the best of [his] belief and knowledge" as is required by the language in the policy. They further contend that in order to rescind Mrs. Hauser's coverage, Life General would have to show that Mr. Hauser knew of Mrs. Hauser's conditions and misstated them. The Hausers also argue that because Life General accepted the application without Mrs. Hauser's signature, Mrs. Hauser cannot be held accountable for any alleged omissions or misrepresentations on the application.

Life General, however, contends that the phrase "to the best of my belief and knowledge" does not modify the rest of the clause which goes on to state: "... and that no material information has been withheld or omitted concerning the past or present state of health of myself or my dependents, and that any misstatements or omissions shall make my insurance based on this application void at the option of the insurer...." This interpretation would, in essence, require Mr. Hauser to warrant that no information regarding Mrs. Hauser's medical background was misrepresented or omitted, whether or not he had knowledge of the information.

The district court found that Mr. Hauser's responses to the questions on the application were directly attributable to Mrs. Hauser because she had provided him the information. The court stated that:

> Clearly, the responses given to the questions presented were not those of Mr. Hauser but instead were Mrs. Hauser's. Mr. Hauser merely filled out and signed the application for his wife, a named dependent. Any representations contained in the "EVIDENCE OF INSURABILITY" section belonged to Mrs. Hauser and therefore it was Mrs. Hauser's representations which the Defendant [Life General] relied upon in evaluating the insurability of Mrs. Hauser.

Based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits submitted, the district court found that Life General would not have approved coverage for Mrs. Hauser had it known her true medical history, and therefore was entitled to rescission. The court granted summary judgment for Life General. This appeal followed.

## II. STANDARD OF REVIEW

■ This Court's review of the district court's grant of summary judgment is plenary. *National Assoc. for the Advancement of Colored People v. Hunt*, 891 F.2d 1555, 1559 (11th Cir.1990). We will affirm the district court if, after viewing the evidence in the light most favorable to the non-moving party, we find that no genuine issue as to any material fact exists and that the moving par-

ty is entitled to judgment as a matter of law. *Id.*

## III. DISCUSSION

This action is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, ("ERISA"), because the insurance policy involved was issued by Life General as part of an employee benefit plan provided to Mr. Hauser's employer, Hauser and McSurdy, P.A. When ERISA governs, federal substantive law developed in this area of contract law controls. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987). However, because " 'ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans,' federal courts must fashion a federal common law to regulate such lawsuits." *Reid v. Prudential Ins. Co.*, 755 F.Supp. 372, 375 (M.D.Fla.1990), quoting *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501 (9th Cir.1985). In fashioning federal common law, "a federal court may borrow 'from state law where appropriate, and [may be] guided by the policies expressed in ERISA and other federal labor laws ...' " *Id.* Because the parties here did not argue that any provision of ERISA deals specifically with the issues presented, state and federal law control this action.

In determining the effects of a misrepresentation on an insurance coverage application, Florida law provides that:

> (1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
>
> (a) They are fraudulent;
>
> (b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (c) The insurer in good faith would either not have issued the policy or contract ... or would not have issued it [under those

particular terms] ... if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Fla.Stat. § 627.409(1) (1985).[1] This Court has found that "an essential prerequisite to the application of Florida Statutes section 627.409(1) is that the insured make an inaccurate statement in his application." *See William Penn Life Ins. Co. of New York v. Sands,* 912 F.2d 1359, 1362 (11th Cir.1990). And, "[t]he Florida Supreme Court has unambiguously held that 'where an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance policy.'" *Sands,* 912 F.2d at 1362 (quoting *Continental Assurance Co. v. Carroll,* 485 So.2d 406, 407–08 (Fla.1986)). Furthermore, as long as the misstatement satisfies subsections (b) or (c) of the statute, it need not be made fraudulently or knowingly to void the policy. *Old Southern Life Ins. Co. v. Kirby,* 522 So.2d 424, 426 (Fla.Dist.Ct.App.1988); *see Sands,* 912 F.2d at 1362.

In *Sands,* however, this Court found that "knowledge and belief" contractual language drafted by the insurer, similar to the language in the policy at issue here,[2] "imposed a different requirement of accuracy than that provided in § 627.409(1)." *Sands,* 912 F.2d at 1364. We stated in *Sands:*

Had Penn Life intended to retain the ability to void the contract based on any inac-

curacy, it should not have used the "knowledge and belief" qualifying language. Such language would reasonably induce an insurance applicant to believe that they were covered under the policy if they answered the questions to the best of their knowledge and the insurer subsequently issued the policy. To permit an insurer to rescind a policy containing "knowledge and belief" language due to an unknowing misstatement not only contravenes the terms of the contract itself, but it is unfair as well. Insurance applicants faced with a policy that unambiguously stated that it could be voided for unknowing statements might have rejected those terms and sought another policy, or they might have undergone a full physical examination to ensure that their beliefs as to their health conform to their representation. Conversely, had Penn Life really thought it essential to know the actual physical condition of its applicants, it could have mandated a physical examination as a condition of issuing a policy.

*Sands,* 912 F.2d at 1364 n. 7.

■ *Sands* is directly applicable to the case at hand. Where the language an insurance company chooses in its insurance application shifts the focus from a determination of truth or falsity of an applicant's statements to an inquiry into whether the applicant believed the statements to be true, the applicant's answers must be assessed in light of his actual knowledge or belief. *Sands,* 912

1. Florida Statutes section 627.409(1) was rewritten effective October 1, 1992. However, the 1985 version of the section is applicable here because this insurance application was submitted to Life General in 1991.

2. The policy language at issue in *Sands* appeared at the bottom of the insurance application form just above the signature line of the insured, and read as follows: "I have carefully read all the above questions; statements and answers are true to the best of my knowledge and belief." *Sands,* 912 F.2d at 1362.

The language in the policy issued here by Life General reads:

"I declare that all of the statements contained in this application are, to the best of my belief and knowledge, true and correct and that no material information has been withheld or omitted concerning the past or present state of health of myself or my dependents, and that any mis-

statements or omissions shall make my insurance based on this application void at the option of the insurer...." Life General argues in this appeal that the "belief and knowledge" language in its policy does not modify the rest of the clause which begins with "and that no material information has been withheld or omitted...." The Hausers argue, however, that the "belief and knowledge" language modifies the entire clause. Because we find the Hausers' reading of the contractual language to be a permissible interpretation, we construe the contract against its drafters, Life General, and find that the "belief and knowledge" language modifies the entire clause. *See United States v. Seckinger,* 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1969) (it is a general maxim that a contract should be construed most strongly against the drafter).

F.2d at 1363 (citing *Skinner v. Aetna Life & Casualty,* 804 F.2d 148, 150 (D.C.Cir.1986)). In *Sands,* we found that section 627.409(1) is inapplicable to the concealment of information not solicited by the insurer and that "[i]n order for an insurer to rescind a policy due to a misstatement in the insured's application, 'such misrepresentation or nondisclosure must be in response to an insurer's request for that information.'" *Sands,* 912 F.2d at 1364 (quoting *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.,* 674 F.Supp. 354, 357 (D.D.C.1987)). Where an insurer only requests the disclosure of information to the best of the insured's "knowledge and belief," and where the applicant so complies, we will decline to protect the insurer "from a risk it assumed by virtue of the contractual language it drafted." *Sands,* 912 F.2d at 1364.

▆ In *Sands* we noted that the presence of a "knowledge and belief" provision in a policy will not insulate an applicant's responses from all review and approved the following test for examining responses to questions asked according to the applicant's knowledge and belief:

> [T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief.... What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In any event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception—persons who having witnessed the Apollo landing still believe the moon is made of cheese.

**3.** The parties dispute whether Mr. Hauser answered the questions to the best of his "knowledge and belief." We find this to be a genuine factual dispute which precludes summary judgment. The United States Supreme Court has defined a factual dispute as genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986).

*Sands,* 912 F.2d at 1365 (citing *Skinner,* 804 F.2d at 151) Based upon the facts of the case now before us, we find that this assessment involves a credibility determination that may only be made by a jury.[3] If based upon the above test, a jury finds that Mr. Hauser did not answer the questions on the application form to the best of his knowledge and belief,[4] it must then determine whether the misstatements were material to the insurer's acceptance of the risk and whether the insurer would have issued the policy had it known the true facts. We therefore REVERSE the district court's grant of summary judgment and REMAND this case for jury trial.

### IV. CONCLUSION

Because we find there are genuine issues of material fact in this case, we REVERSE the district court's grant of summary judgment and REMAND for trial.

REVERSED and REMANDED.

**4.** The Appellee argues that it was Mrs. Hauser who actually answered the questions on the application form and that therefore the test should be whether the questions were answered to the best of *her* knowledge and belief. We find this argument unpersuasive, however, because Mrs. Hauser did not sign the application and the Appellee accepted the application without her signature.