Cheryl BISCHOFF and Vicky
Stites, Plaintiffs,

v.

OSCEOLA COUNTY, Florida, and Sheriff
Charles Croft, in his Official
Capacity, Defendants.

No. 98–583–CIV–ORL–18C.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 2, 1999.

Brian Fahling, Bryan J. Brown, American Family Association Law Center, Tupelo, MS, Heidi Wolff Isenhart, Law Office of Heidi Wolff Isenhart, Orlando, FL, for Cheryl Bischoff, Vicky Stites.

Jo O. Thacker, County Attorney's Office, Kissimmee, FL, for Osceola County, Florida.

D. Andrew DeBevoise, Ian D. Forsythe, Bobo, Spicer, Ciotoli, Fulford, Bocchino, DeBevoise & Le Clainche, P.A., Orlando, FL, for Charles Croft.

## ORDER

G. KENDALL SHARP, District Judge.

Cheryl Bischoff and Vicky Stites sue Osceola County and the Osceola County Sheriff, Charles Croft, arguing that the plaintiffs' constitutional rights were chilled when they witnessed the arrest of several of their companions during a public demonstration. Several motions are presently before the court. Osceola County moves to dismiss (Doc. 22) the plaintiffs' action, and Sheriff Croft moves for summary judgment (Doc. 19). The plaintiffs respond in opposition and also move for summary judgment (Doc. 29). Because the undisputed evidence shows that the plaintiffs lack standing to bring their claims, this court lacks jurisdiction to hear the plaintiffs' claims, and the plaintiffs' action must be dismissed.

## I. Background

On December 29, 1997, religious activists representing a variety of organizations participated in a demonstration to protest what they perceived as Walt Disney World's support of homosexuality. (Videotape of the Demonstration, Pl.'s Ex. F, Doc. 32.) Cheryl Bischoff and Vicky Stites were two of the activists present at the demonstration. (Pl.'s Am. Verified Compl. ¶ 6, Doc. 17.)

The demonstration occurred along the narrow, grassy islands that border the heavily trafficked intersection of Irlo Bronson Memorial Highway and Old Vineland Road in Osceola County, Florida. (*Id.* ¶¶ 6–7; Videotape, Pl.'s Ex. F, Doc. 32.) The activists carried signs and handbills that contained messages promoting their viewpoint. (Videotape, Pl.'s Ex. F, Doc. 32.) When motorists were stopped at traffic lights, some of the activists distributed their handbills to the motorists. (*Id.*) Occasionally, the activists crossed several lanes of traffic to reach a particular vehicle. (*Id.*)

The demonstration drew the attention of the Osceola County Sheriff's Department. The Department's officers complained to the activists that the demonstration was "backing up traffic for a mile." (*Id.*) The officers repeatedly warned the demonstrators not to impede the flow of traffic and to "stay off the roadway or they would be arrested." (*Id.*; Aff. Levine ¶¶ 4–5, Doc. 20; Aff. Griffin ¶ 4, Doc. 21.)

According to the officers, three of the activists, including Pastor Phillip Benham, Matthew Bowman, and Seth Marschke, ignored the warnings and entered the roadway. (Aff. Griffin ¶¶ 4–6, Doc. 21; Aff. Levine ¶¶ 6–8, Doc. 20.) The officers then arrested them. (*Id.*) According to the officers, "[o]nly those persons who entered the roadway and impeded the safe and convenient flow of traffic in violation of Florida Statutes were arrested." (*Id.* ¶ 8; Aff. Griffen ¶ 6, Doc. 21.) Pastor Benham, Mr. Bowman, and Mr. Marschke were each charged with violating two provisions of the Florida Uniform Traffic Control Law, Fla.Stat. chs. 316.001 – 316.75, specifically chapter 316.2055 [1] and chapter 316.2045(1) [2]. (Aff. Levine ¶ 8, Doc. 20; Aff. Griffen ¶ 6, Doc. 21.)

1. Chapter 316.2055 provides:
   It is unlawful for any person on a public street, highway, or sidewalk in the state to throw into, or attempt to throw into, any motor vehicle, or offer, or attempt to offer, to any occupant of any motor vehicle, whether standing or moving, or to place or throw into any motor vehicle any advertising or soliciting materials or to cause or secure any person or persons to do any one of such unlawful acts.

2. The relevant provisions of chapter 316.2045 provide:
   (1) It is unlawful for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retard-

ing, or restraining traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of vehicles or pedestrians traveling thereon; and any person or persons who violate the provisions of this subsection, upon conviction, shall be cited for a pedestrian violation, punishable as provided in chapter 318.
   (2) It is unlawful, without proper authorization or a lawful permit, for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by any of the means specified in subsection (1) in order to solicit. Any person who violates the provisions of this subsection is guilty of a misdemeanor of the second

Ms. Bischoff and Ms. Stites witnessed the arrests. (Aff. Bischoff ¶ 4, Doc. 33; Aff. Stites ¶ 3, Doc. 32A.) According to the plaintiffs, Pastor Benham, Mr. Bowman, and Mr. Marschke did not enter the roadway nor impede the flow of traffic. (Aff. Bischoff ¶¶ 13–14, Doc. 33; Aff. Stites ¶¶ 12–13, Doc. 32A.) The plaintiffs claim that Mr. Bowman and Mr. Marschke distributed handbills from the shoulder of the intersection, and that Pastor Benham merely stood on the grassy median and did not distribute handbills at all. (Aff. Bischoff ¶¶ 14, Doc. 33; Aff. Stites ¶¶ 13, Doc. 32A.)

The plaintiffs further allege that they and the other activists were engaged in the same activities as Pastor Benham, Mr. Bowman, and Mr. Marschke. (Aff. Bischoff ¶ 8, Doc. 33; Aff. Stites ¶ 7, Doc. 32A.) Also, the plaintiffs contend that neither the plaintiffs nor any of the other activists impeded the flow of traffic. (Aff. Bischoff ¶¶ 13, Doc. 33; Aff. Stites ¶ 12, Doc. 32A.)

Moreover, the plaintiffs allege that a particular female officer directly threatened Ms. Bischoff and Ms. Stites with arrest. (Aff. Bischoff ¶ 17, Doc. 33; Aff. Stites ¶ 16, Doc. 32A.) Following the arrests of Pastor Benham, Mr. Bowman, and Mr. Marschke, the plaintiffs assert that the officers directed the remaining activists to stop distributing handbills and to abandon the intersection. (Pl.'s Am. Verified Compl. ¶ 22, Doc. 17.)

Although Ms. Bischoff and Ms. Stites would like to return to the intersection to distribute handbills, Ms. Bischoff and Ms. Stites have not done so for fear that they would be arrested. (*Id.* ¶¶ 47–48.) They justify their fear based on the officer's threat of arrest on December 29 and the subsequent prosecution of Pastor Benham, Mr. Bowman, and Mr. Marschke. (*Id.* ¶¶ 25, 47.) Ms. Bischoff and Ms. Stites brought the present action to challenge the constitutionality of the two statutes so that they may continue to distribute handbills at the intersection without fear of arrest.

In their nine count complaint, the plaintiffs argue that chapters 316.2045 and 316.2055 violate a variety of constitutional protections, including the rights to free speech, due process, equal protection, and free press. The plaintiffs ask this court to declare both statutes unconstitutional, to declare that Sheriff Croft, in his official capacity, applied the two statutes in an unconstitutional manner, and to enter an injunction consistent with these declarations.

## II. Discussion

The parties present several arguments to the court including standing. The court must first address the issue of standing because, unless the plaintiffs have standing to bring their claims, this court is without jurisdiction to hear the plaintiffs' case. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Fitzgerald v. Seaboard Sys. Railroad, Inc.,* 760 F.2d 1249, 1251 (11th Cir.1985) (stating that federal courts have a continuing obligation "to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises"). The plaintiffs raise the issue of standing in their motion for summary judgment, and Sheriff Croft addresses the argument in his response to that motion. Because the court ultimately finds that the plaintiffs do not have standing, the court lacks jurisdiction and will not address the parties' other arguments. .

### A. Summary Judgment Standard

Summary judgment is appropriate only "if, after viewing the evidence in the light most favorable to the non-moving party, the court finds that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Hauser v. Life Gen. Sec. Ins. Co.,* 56 F.3d 1330, 1333

---

degree, punishable as provided in s. 775.082 or s. 775.083. Organizations qualified under s. 501(c)(3) of the Internal Revenue Code and registered pursuant to chapter 496, or persons or organizations acting on their behalf are exempted from the provisions of this subsection for activities on streets or roads not maintained by the state. Permits for the use of any portion of a state-maintained road or right-of-

way shall be required only for those purposes and in the manner set out in s. 337.406.
(3) Permits for the use of any street, road, or right-of-way not maintained by the state may be issued by the appropriate local government.
(4) Nothing in this section shall be construed to inhibit political campaigning on the public right-of-way or to require a permit for such activity.

(11th Cir.1995). The moving party has the initial duty to present evidence sufficient to show that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party is able to meet its duty, then the burden shifts to the non-moving party to demonstrate that a material issue of fact exists to preclude summary judgment. *See id.*

## B. As Applied Challenge

■ The doctrine of standing ensures that parties before the court are sufficiently interested in "the outcome of the proceedings such that they can be expected to frame the issues properly." *Harris v. Evans,* 20 F.3d 1118, 1121 (11th Cir.1994). The doctrine arises from Article III's "case" or "controversy" requirement and from certain prudential considerations developed by the Supreme Court. *See Warth,* 422 U.S. at 498–99, 95 S.Ct. 2197. Before a litigant is entitled to have the court decide the merits of a dispute, the litigant must satisfy both the constitutional and the prudential standing requirements.

To satisfy the constitutional standing requirements, a plaintiff must show "(1) that [the plaintiff] has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling." *Id.* at 1121; *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The prudential considerations include:

1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir.1987).

■ The plaintiffs lack standing to challenge the statutes as applied because they cannot establish that they suffered an actual or threatened injury sufficient to ensure that the court would not be rendering an advisory opinion. To show an actual or threatened injury, a plaintiff must show that he has "a sufficiently concrete interest in the outcome of [the] suit to make it a case or controversy subject to a federal court's Art. III jurisdiction." *Harris,* 20 F.3d at 1122 (quoting *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). A direct threat of arrest can constitute an injury sufficient to create standing. *See Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). However, the injury cannot be "conjectural," "hypothetical," or "abstract." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The plaintiff must establish that the "plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure." *International Soc. for Krishna Consciousness v. Eaves,* 601 F.2d 809, 818 (5th Cir.1979).

Although the plaintiffs assert that they suffered an injury because a particular officer threatened them with arrest, the undisputed evidence shows that the plaintiffs are seeking standing not because they suffered an injury themselves but instead because their companions suffered an injury. The plaintiffs vaguely plead the threat of arrest. Also, the officers' affidavits show that the officers only arrested those who obstructed traffic, and both parties agree that the plaintiffs did not, and never intended to, obstruct the flow of traffic. Moreover, although the plaintiffs contend that they were engaged in the same activities as those arrested, the plaintiffs do not describe their own actions with specificity. Based upon this evidence, the court cannot find that the statute was applied to the plaintiffs in any concrete manner nor that the plaintiffs have a sufficient interest in the outcome of this litigation. Instead, the court can only conclude that the plaintiffs are seeking standing by simply pointing to the injury of their arrested companions.

■ To the extent that the plaintiffs seek to assert standing on behalf of their arrested companions, the plaintiffs lack standing for prudential reasons. A litigant may not assert the rights of a third party unless the

following three criteria are met: "the litigant must have suffered an 'injury-in-fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Harris,* 20 F.3d at 1122. As discussed above, the plaintiffs have not suffered an injury. Also, the plaintiffs do not have a close relationship with those arrested because courts have only recognized such relationships in limited circumstances such as doctor-patient relationships, vendor-vendee relationships, or attorney-client relationships. *See id.* Here, the plaintiffs merely share the same beliefs as the arrested demonstrators. Finally, there is no evidence to suggest that the arrested demonstrators were unable to assert their own rights in court. Because the plaintiffs did not suffer an injury, they do not have a close relationship to the arrested activists, and there is no showing that the arrested activists cannot protect their own interests, the plaintiffs lack standing to assert the rights of Pastor Benham, Mr. Marschke, or Mr. Bowman.

**C. Facial Challenge**

The plaintiffs further attempt to challenge the statutes as facially overbroad. The overbreadth doctrine is an exception to the traditional standing requirements. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The doctrine allows a plaintiff to bring a First Amendment challenge to an overly broad statute without first showing that the plaintiff's own "conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Id.* at 612, 93 S.Ct. 2908 (quoting *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)). The doctrine allows litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*

■ The doctrine applies with varying degrees of force depending on the type of statute in question. In this case, the statutes are merely traffic laws designed to regulate conduct along public roadways. Because the statutes regulate conduct, the court will find a challenged statute to be overly broad only if the overbreadth of the statute is "real" and "substantial" when "judged in relation to the statute's plainly legitimate sweep." *Id.* at 615, 93 S.Ct. 2908.

To determine whether the statutes are overly broad, the court must first examine the legitimate sweep of the statutes. The court will assume for purposes of this discussion that modern roadways constitute a traditional public forum for the discourse of ideas. *See International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 679–83, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (stating that "streets and parks" are traditional public fora but finding that busy airport terminals are not because the purpose of airport terminals is to facilitate passenger air travel); *Frisby v. Schultz,* 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (finding that a residential street was a public forum). Based upon this assumption, the legitimate sweep of the statutes involves three considerations, including whether the statutes (1) "are justified without reference to the content of the regulated speech;" (2) "are narrowly tailored to serve a significant governmental interest;" and (3) "leave open ample alternative channels for communication of the information." *See Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).

■ After reviewing the statutes at issue, the court cannot conclude that the statutes are substantially overbroad. Chapters 316.2055 and 316.2045 are both plainly content neutral. Further, the statutes are narrowly tailored to serve substantial governmental interests because the statutes promote the safe and convenient flow of traffic. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 154–55, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *International Caucus of Labor Committees v. City of Montgomery,* 111 F.3d 1548, 1551 (11th Cir. 1997). Finally, the statutes leave ample al-

ternative channels for communication because individuals may still solicit under chapter 316.2045 as long as they first obtain a permit and because many alternative public forums exist where individuals can express their views. *See Acorn v. City of Phoenix,* 798 F.2d 1260, 1267 (9th Cir.1986) (finding that "it strains credulity to believe" that the plaintiffs were left without ample alternatives to solicit where the plaintiffs could solicit pedestrians on the sidewalk, door to door, over the telephone, or direct mail). Because the statutes are content neutral, because they are narrowly tailored to serve a substantial governmental interest, and because the plaintiffs have ample opportunities to express themselves in other fora, the statutes are not substantially overbroad.

The plaintiffs argue that the statutes are substantially overbroad because the statutes draw distinctions based upon the content of the expression. In support, the plaintiffs cite *Dimmitt v. City of Clearwater,* 985 F.2d 1565, 1571 (11th Cir.1993). In *Dimmitt,* the Eleventh Circuit examined whether a city ordinance was overbroad where the ordinance required landowners to obtain a permit before flying a specified number of flags on their property and where the ordinance exempted from the permit requirement any flags representing a governmental unit. *See id.* at 1568. The Eleventh Circuit held that the ordinance impermissibly restricted speech based upon its content because the ordinance distinguished government flags from other flags. *See id.* at 1571.

*Dimmitt* does not control the present case because, in *Dimmitt,* the ordinance preferred a particular message: the support of the government. In contrast, the statutes in the present case do not impermissibly draw a distinction based upon content because they apply evenly to broad classes of speakers. For example, chapter 316.2055 applies to all solicitors. Also, although chapter 316.2045 requires permits for all solicitors except for qualified charities and except for individuals involved in political campaigning, the exceptions apply to all qualified charities and all political campaigners regardless of the content of the message.

The plaintiffs also argue that the exception for qualified charities set forth in chapter

316.2045 prefers certain organizations over others because some groups are unable or unwilling to be qualified as a charitable organization under I.R.C. § 501(c)(3). At most, this is an incidental effect and certainly not the purpose of the statute. *See Ward,* 491 U.S. at 791, 109 S.Ct. 2746 (stating that a "regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others").

### III. Conclusion

The plaintiffs themselves did not suffer a sufficient injury to allow them to challenge the statutes as applied, and the plaintiffs cannot create standing by simply pointing to the injury of their arrested companions. Moreover, the statutes are not substantially overbroad because the statutes are merely traffic laws that regulate conduct in a neutral manner.

Based upon the foregoing, the plaintiffs' motion for summary judgment (Doc. 29) is **DENIED,** and the entire action is **DISMISSED** for lack of standing. Because the *entire action is dismissed for lack of standing,* Sheriff Croft's motion for summary judgment (Doc. 19) and Osceola County's motion to dismiss (Doc. 22) are **DENIED** as moot.